UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| JOHN RICK ORTEGO, M.D. D/B/A ORTEGO CHIROPRACTIC CLINIC | CASE NO. 6:21-CV-01291 |
| VERSUS | JUDGE ROBERT R. SUMMERHAYS |
| WEST AMERICAN INSURANCE CO | MAGISTRATE JUDGE CAROL B. WHITEHURST |

MEMORANDUM RULING

Presently before the Court is Defendant West American Insurance Company's Rule 12(b)(6) Motion to Dismiss [ECF No. 9]. Plaintiff opposes the Motion.

I.
FACTUAL BACKGROUND

John Rick Ortego, M.D., d/b/a Ortego Chiropractic Clinic ("Ortego") is a "group of chiropractors" in Opelousas, Louisiana that provides "alignments, corrective back, neck and full body therapy and treatment, as well as physical therapy and various other procedures designed to alleviate discomfort."[1] West American Insurance Company ("West American") is an insurance company incorporated in Indiana, with its principal place of business in Boston, Massachusetts.[2] West American issued Policy No. BZW 57112870 ("Policy") to Ortego for the policy period of April 17, 2019 to April 17, 2020.[3]

Ortego asserts that COVID-19 and the government closure orders issued in response to the COVID-19 Pandemic caused its alleged losses.[4] Ortego claims that the governmental orders

---

[1] ECF No. 1, Petition for Declaratory Judgment, ¶ 4.1.
[2] ECF No. 1-1, Notice of Removal, ¶ 12.
[3] ECF No. 9, Exh. 1, Certified Copy of Policy.
[4] *See* ECF No. 1, at ¶ 5.

1

caused the physical loss of Ortego's property and has interrupted Ortego's businesses causing financial hardship and expense.[5] Specifically, Ortego alleged that the business had suffered lost business income because it has reduced the operations of its business due to Proclamation Number 25 JBE 2020, issued on March 11, 2020 by Louisiana Governor John Bel Edwards (the "Proclamation").[6] Ortego alleges that it ceased performing all routine procedures to comply with this Proclamation and subsequent executive orders.[7]

Ortego notified West American of its claimed losses and sought coverage under the Policy for "loss of . . . property" and lost "business income" and "extra expense."[8] West American determined the Policy did not cover Ortego's alleged losses and denied the claim.[9] Ortego seeks a declaration that its monetary losses from March 11, 2020, through the present are covered under the Policy's Business Income, Civil Authority, and Extra Expense provisions, and an accompanying order enjoining West American from continuing to breach its contract and requiring it to comply with these provisions.[10] Ortego also seeks a judgment that West American has breached its contract by denying Ortego's claims for coverage under the same three provisions.[11] Finally, Ortego seeks pre- and post-judgment interest, attorney's fees, and costs.[12]

Plaintiff seeks coverage under the following provisions of the Policy:

**Section 1(A)(5)(f) Business Income**

We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or damage to property at premises which are described in the Declarations and for which a Business Income Limit of

---

[5] *Id.* at ¶ 26.
[6] *Id.*
[7] *Id.* at ¶¶ 10, 12.
[8] *See Id.* at ¶¶ 5, 13-15
[9] *See Id.* at ¶¶ 16, 30.
[10] *Id.* at ¶¶ 32-37 (Count I); ¶¶ 46- 50 (Count III); ¶¶ 59-64 (Count V).
[11] *Id.* ¶¶ 38-45 (Count II); ¶¶ 51-58 (Count IV); ¶¶ 65-72 (Count VI).
[12] *Id.* at Prayer for Relief.

2

Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss.[13]

\*\*\*

**Section 1(A)(5)(g) Extra Expense**

We will pay necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss.[14]

\*\*\*

**Section 1(A)(5)(i) Civil Authority**

We will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises due to direct physical loss of or damage to property, other than at the described premises, caused by or resulting from any Covered Cause of Loss.[15]

Each of the coverages sought by Ortego require, among other things, direct physical loss of or damage to property that is caused by or results from a "Covered Cause of Loss." The term "Covered Causes of Loss" (as used in all of the foregoing provisions) is defined as "RISKS OF DIRECT PHYSICAL LOSS unless the loss is . . . Excluded in Paragraph B., Exclusions."[16]

The Policy also includes an exclusion entitled "EXCLUSION OF LOSS DUE TO VIRUS OR BACTERIA" (the "Virus Exclusion"), which provides as follows:

We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.[17]

---

[13] ECF No. 9, Exhibit 1, p. 28.
[14] *Id.* at p. 29.
[15] *Id.* at p. 30.
[16] *Id.*, p. 24.
[17] *Id.* at p. 92.

3

## II.
## LAW AND ANALYSIS

### A.  Motion to Dismiss Standard.

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is appropriate when a complaint fails to state a legally cognizable clam.[18] In other words, a Rule 12(b)(6) motion "admits the facts alleged in the complaint, but challenges plaintiff's rights to relief based upon those facts."[19] When deciding a Rule 12(b)(6) motion, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff."[20] "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[21] Moreover, "the plaintiff must plead enough facts 'to state a claim to relief that is plausible on its face.'"[22] The requirement that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.[23] In considering a Rule 12(b)(6) motion, a court must limit itself to the contents of the complaint, including documents attached to or incorporated by the complaint, and matters of which judicial notice may be taken, including matters of public record.[24]

"In diversity cases, a federal court must apply federal procedural rules and the substantive law of the forum state."[25] Therefore, in this case, Louisiana substantive law regarding the

---

[18] *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).
[19] *Id.* at 161-62.
[20] *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted).
[21] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations, quotation marks, and brackets omitted).
[22] *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 570).
[23] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (citing *Twombly*, 550 U.S. at 555).
[24] *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000); *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017-18 (5th Cir. 1996); *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007).
[25] *Hyde v. Hoffmann-La Roche, Inc.*, 511 F.3d 506, 510 (5th Cir. 2007).

interpretation of insurance contracts must be applied. Under Louisiana law, "an insurance policy is a contract between the parties and should be construed by using the general rules of interpretation of contracts set forth in the Louisiana Civil Code."[26] The Court's role is to attempt to determine the intentions of the parties based on the language of the contract itself, "using their plain, ordinary and generally prevailing meaning," unless those words have acquired a technical meaning.[27] "An insurance contract, however, should not be interpreted in an unreasonable or strained manner under the guise of contractual interpretation to enlarge or restrict its provisions beyond what is reasonably contemplated by unambiguous terms or achieve an absurd conclusion."[28]

**B.    Business Income Coverage.**

The initial argument made by West American is that the Policy is limited to "physical loss of or damage to" the property and that Ortego fails to allege the existence of physical loss or damage as would be necessary to trigger the Policy. As noted above, each of the relevant provisions in the Policy explicitly require "physical loss of or damage to" the property. The Fifth Circuit has previously held that "physical loss of or damage to" property typically requires demonstrable, physical alteration of the property.[29] Further, and specifically dealing with cases related to COVID-19, an overwhelming body of recent case law has held that losses incurred as a result of COVID-19 mandates are purely economic in nature.[30]

---

[26] *In re Chinese Manufactured Drywall Prod. Liab. Litig.*, 759 F. Supp. 2d 822, 829 (E.D. La. 2010) (quoting *Cadwallader v. Allstate Ins. Co.*, 848 So.2d 577, 580 (La. 2003)).
[27] *Id.*
[28] *Id.*
[29] *See Hartford Ins. Co. of Midwest v. Mississippi Valley Gas Co.*, 181 F. App'x 465, 470 (5th Cir. 2006) ("The language 'physical loss or damage' strongly implies that there was an initial satisfactory state that was changed by some external event into an unsatisfactory state—for example, the car was undamaged before the collision dented the bumper.")
[30] *See, e.g. Oral Surgeons, P.C. v. Cincinnati Ins. Co.*, 2 F.4th 1141 (8th Cir. 2021) (holding that the plaintiff's loss of use of its office did not constitute "physical loss" or "physical damage"); *Gilreath Family & Cosmetic Dentistry, Inc. v. Cincinnati Ins. Co.*, No. 21-11046, 2021 WL 3870697, at *2 (11th Cir. August 31, 2021) ("there must be 'an actual change in insured property' that either makes the property 'unsatisfactory for future use' or requires 'that repairs be made'"); *Lafayette Bone & Joint Clinic, Inc. v. Trans. Ins. Co.*, No. 6:21-CV-00317, 2021 WL 1740466, at *3 (W.D. La. May 3, 2021) ("every district court within the circuit to address the issue has determined that a building's exposure

Significantly, the Fifth Circuit recently held, in a case governed by Louisiana law, that the language "direct physical loss of or damage to property" covers only "tangible alterations of, injuries to, and deprivations of property."[31] In addition, this Court has recently ruled in a similar case involving virtually identical policy language that:

> While PHI is correct that the virus itself is physical, there is no evidence that the mere existence of the virus results in a physical loss of or damage to property. It is common knowledge that, if left alone, the coronavirus in a building or on a surface will naturally die within hours to days and that the coronavirus can be safely eliminated with simple cleaning or sanitizing. Following the eradication of the virus through either method, no physical change to the surface or building remains thereafter. The temporary presence of the virus does not physically or permanently change property. Accordingly, the presence of the coronavirus that causes COVID19 does not result in direct physical loss of or damage to property and does not trigger coverage under Zurich's insurance policy. Consequently, there are no facts supporting the conclusion that the policy provides coverage under the policy, and this Court finds that PHI has failed to state a claim upon which relief can be granted.[32]

The same reasoning applies with equal force to the instant case. Accordingly, Ortego cannot state a claim upon which relief can be granted for coverage under the Business Income coverage provision of the Policy.

C. **Civil Authority Coverage.**

West American also argues that Ortego fails to state a claim upon which relief can be granted pursuant to the Policy's Civil Authority provision. In order to establish a right to that

---

to the coronavirus does not meet this requirement"); *Kevin Barry Fine Art Assocs. v. Sentinel Ins. Co., Ltd.*, 513 F. Supp. 3d 1163, 1171 (N.D. Cal. 2021); *Uncork & Create LLC v. Cincinnati Ins. Co.*, 498 F. Supp. 3d 878 (S.D. W. Va. 2020); *Nguyen v. Travelers Cas. Ins. Co. of Am.*, No. 2:20-CV-00597, 541 F.Supp.3d 1200, 2021 WL 2184878, at *3 (W.D. Wash. May 28, 2021) (holding that the coronavirus did not cause "direct physical loss of or damage to" the property of hundreds of businesses that filed suit against their insurers); *Terry Black's Barbecue, LLC v. State Auto. Mut. Ins. Co.*, 514 F.Supp.3d. 896, 907 (W.D. Tex. 2021); *Diesel Barbershop LLC v. State Farm Lloyds*, 479 F.Supp.3d 353, 360 (W.D. Tex. 2020); *Laser & Surgery Center of Acadiana LLC v. Ohio Casualty Insurance Co.*, No. 6:2021-CV-01236, 2021 WL 2702123, at *3 (W.D. La. June 14, 2021), report and recommendation adopted, 2021 WL 2697990 (W.D. La. June 30, 2021); *Pierre v. Transportation Ins. Co.*, No. 6:20-CV-01660, 2021 WL 1709380, at *3 (W.D. La. Apr. 29, 2021).
[31] *Q Clothier New Orleans, LLC v. Twin City Fire Insurance* Company, ___ F.4ᵗʰ ___ (5th Cir. 2022), 2022 WL 841355.
[32] *PHI Group, Inc. v. Zurich American Insurance Company*, No. 6:21-CV-883, 2021 WL 7162529 (W.D. La. Oct. 18, 2021), Report and Recommendation adopted, 2022 WL 553705 (W.D. La. Feb. 23, 2022).

coverage, Ortego is required to allege facts showing, among other things, that: (1) the Proclamation prohibited access to the premises due to direct physical loss of or damage to property, other than at the described premises; and (2) the Proclamation was issued "due to" direct physical loss of or damage to property, other than at the described premises that was caused by a Covered Cause of Loss.

Ortego has not alleged that the actions of any civil authority prohibited Ortego, its staff, or its patients from accessing the insured premises. To the contrary, the Complaint alleges that staff and patients always had access to the premises and only that Ortego began limiting the practice's services to emergency care since March 11, 2020. Ortego alleges merely that the Proclamation temporarily required Ortego to limit the types of services performed at the premises.[33] The Fifth Circuit has held that the critical word "prohibit" means to "to forbid [access] by authority or command."[34] The clause requires complete prohibition of access.[35] Further, the Policy's Civil Authority endorsement only applies to civil authority orders issued "due to direct physical loss of or damage to property." The Fifth Circuit has specifically held that coverage under a similar civil authority provision requires a nexus between the civil authority order and property damage or losses near the insured premises.[36] As discussed above, there was no direct physical loss of or damage to property. Accordingly, Ortego cannot establish a claim upon which relief can be granted for coverage under the Civil Authority provision of the Policy.

---

[33] ECF No. 1, ¶ 11.
[34] *730 Bienville Partners, Ltd. v. Assurance Co. of Am.*, 67 F. App'x 248, 2003 WL 21145725 (5th Cir. 2003).
[35] *See Commstop v. Travelers Indem. Co. Conn.*, 2012 WL 1883461, at *10 (W.D. La. May 17, 2012).
[36] *Q Clothier New Orleans, LLC v. Twin City Fire Insurance* Company, ___ F.4th ___ (5th Cir. 2022), 2022 WL 841355.

7

### D. Virus Exclusion.

Next, West American argues that even if coverage under the Policy could be claimed, the Virus Exclusion would exclude coverage. The Policy provides that West American "will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease."[37] Ortego alleges that the Virus Exclusion does not apply because the loss was due to the Governor's Proclamation, not to the virus itself. The Complaint attributes Ortego's alleged inability to fully utilize its premises, and its resulting financial losses, to the Proclamation. The specific text of the Proclamation states that Governor Edwards promulgated it in response to "an outbreak of respiratory disease caused by a novel (new) coronavirus that was first detected in China and which has now been detected in many other countries, including the United States."[38] A state of emergency was declared because the Governor and the State of Louisiana had "reason to believe that COVID-19 may be spread amongst the population by various means of exposure, thereby posing a high probability of widespread exposure and a significant risk of substantial future harm to a large number of Louisiana citizens."[39] In fact, Ortego acknowledges that the purpose of the Proclamation was "to mitigate and slow the spread of COVID-19 regardless of whether the virus was present or not at any of the businesses affected facilities."[40] Since both the Complaint and the Proclamation acknowledge that the Proclamation came into existence only because a virus which was spreading across the country and threatening the citizens of Louisiana, the Court concludes that the Complaint alleges loss or damage "resulting from" an excluded risk, specifically, a "virus that induces or is capable of

---

[37] ECF No. 9, Exhibit 1, p. 92.
[38] Proclamation Number 25 JBE 2020.
[39] *Id.*, p. 2.
[40] ECF No. 1, Complaint, ¶ 20.

8

inducing physical distress, illness or disease."[41] Courts in this circuit and elsewhere have applied similar virus exclusions to bar coverage for business income loss and extra expense, in cases like the present case, where the insured alleged an interruption of its business to government orders issued to slow the spread of COVID-19.[42]

In sum, Ortego's allegations show that its inability to fully utilize its office resulted from the virus that causes COVID-19, which is an excluded cause of loss. As such, even if the Court were to find that coverage existed under the Policy, the Virus Exclusion would apply and preclude coverage.

For the foregoing reasons, Ortego's Complaint fails to state a claim upon which relief can be granted. Further, based upon the Court's ruling, Ortego cannot cure the deficiencies so granting leave to amend would be futile. Accordingly, Defendant West American Insurance Company's Rule 12(b)(6) Motion to Dismiss [ECF No. 9] is GRANTED and all causes of action set forth in the Complaint are DISMISSED.

THUS DONE in Chambers on this 24th day of March, 2022.

ROBERT R. SUMMERHAYS
UNITED STATES DISTRICT JUDGE

---

[41] ECF No. 9, Exhibit 1, p. 92.
[42] *See Q Clothier New Orleans LLC,* 2021 WL 1600247 at *8 (E.D. La. Apr. 23, 2021) (holding that virus exclusion extinguishes insured's claim for business income coverage based on effects of government orders); *Real Hosp., LLC,* 499 F.Supp.3d at 297 (granting motion to dismiss restaurant's claim for business income loss due to government shut-down orders and emphasizing that identical Virus exclusion "clearly and unequivocally exempts 'loss or damage caused by or resulting from any virus.'"); *Frosch Holdco, Inc. v. Travelers Indem. Co.,* No. 4:20-CV-1478, 2021 WL 1232777, at *4-5 (S.D. Tex. Feb. 11, 2021) (applying a similar virus exclusion to bar coverage for business income loss attributable to government closure orders, district court noted that the exclusion "is plainly stated and free of any ambiguous jargon, and explicitly encompasses both direct and indirect losses").